STATE OF NORTH CAROLINA v. WALLACE ANTIJUAN BOSTON

No. COA02-1717

(Filed 6 July 2004)

**1. Firearms and Other Weapons— possession of firearm by felon—penalty for underlying offense—substantial right not affected**

The trial court did not err by denying defendant's motion to dismiss an indictment for possession of a firearm by a felon where the indictment did not state the penalty for the underlying conviction. The provision of N.C.G.S. § 14-415.1(c) that requires the indictment to state the penalty is not material and does not affect a substantial right. Defendant is no less apprised of the conduct which is the subject of the accusation than he would have been if the penalty had been included.

**2. Evidence— possession of firearm by felon—probation for underlying offense revoked—relevant**

Evidence that defendant's probation had been revoked was admissible in a prosecution for possession of a firearm by a felon. The evidence was relevant to proving defendant's status as a felon and the court's limiting instructions were sufficient to cure any prejudice.

**3. Firearms and Other Weapons— possession by felon—no instruction on justification**

The trial court did not err by refusing to give an instruction on justification in a prosecution for possession of a firearm by a felon. Defendant was involved in an ongoing dispute, but there was no evidence that he was under an imminent threat of death or injury when he decided to carry a gun.

Judge WYNN concurs in the result.

Appeal by defendant from judgment entered 23 April 2002 by Judge Zoro J. Guice, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 14 October 2003.

**STATE v. BOSTON**

[165 N.C. App. 214 (2004)]

*Attorney General Roy Cooper, by Assistant Attorney General June S. Ferrell, for the State.*

*Reita P. Pendry for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Wallace Antijuan Boston ("defendant") appeals his convictions of second-degree trespass and possession of firearms by a felon. For the reasons stated herein, we conclude that defendant received a trial free of prejudicial error.

The factual and procedural history of this case is as follows: In June 1997 Michael Godwin ("Godwin"), deputy director for the Housing Authority of the City of Asheville ("Housing Authority"), sent a letter to defendant banning him from all Housing Authority properties, specifically the Deaverview Apartment complex ("Deaverview"). The ban was based on a prior, dismissed illegal gambling charge against defendant, and an April 1996 conviction of possession with intent to sell and distribute cocaine.

Deaverview resident Derrick Smith ("Smith") testified at trial that on 25 October 2000, he observed defendant walking through the parking lot of the apartment complex carrying a pistol. Defendant walked toward Jonathan Daniels ("Daniels") who, upon observing defendant, ran behind a parked car. Defendant chased Daniels around the car several times. Smith heard defendant repeat the following statement to Daniels two or three times: "Let's put the guns down, put the guns down, let's fight like men." Defendant placed his gun on the ground. Daniels reached over the car, aimed a gun at defendant who was in a crouched position behind the car, and shot defendant four times. Soon thereafter, police officers from the Asheville Police Department and paramedics arrived on the scene.

Defendant was taken to Mission Hospital, where he was treated for four gunshot wounds. On 9 November 2000, two arrest warrants were issued, charging defendant with second-degree trespassing and possession of firearms by a felon. Defendant was subsequently arrested and indicted on these two charges.

At the beginning of trial, defendant made an oral motion to dismiss the charge of possession of firearms by a felon. Defendant argued that the bill of indictment did not provide the penalty for the felony of which defendant was previously convicted, and therefore

the indictment was fatally defective. The trial court denied defendant's motion, and proceeded with the trial. The jury subsequently found defendant guilty of second-degree trespassing and possession of firearms by a felon. Defendant was sentenced to a term of fifteen to eighteen months imprisonment. It is from these convictions that defendant appeals.

---

As an initial matter, we note that defendant's brief contains arguments supporting only three of the original five assignments of error on appeal. The two omitted assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) (2004). We therefore limit our review to those assignments of error addressed in defendant's brief.

The issues presented for appeal are whether the trial court erred by (I) denying defendant's motion to dismiss the indictment for possession of firearms by a felon; (II) allowing the State to introduce evidence that defendant's probationary sentence was revoked; and (III) failing to instruct the jury that justification is an affirmative defense to the charge of possession of firearms by a felon.

[1] Defendant first argues that the trial court erred by denying defendant's motion to dismiss the indictment for possession of firearms by a felon. Defendant argues that the indictment is fatally defective because it fails to state the statutory penalty for the underlying felony conviction. We disagree.

Defendant was charged pursuant to § 14-415.1 with possession of firearms by a felon. Section 14-415.1(a) prohibits "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or · other firearm . . . ." Specific information is required for a proper indictment of possession of firearms by a felon. The indictment

> *must* set forth the date that the prior offense was committed, the type of offense and the penalty therefor, and the date that the defendant was convicted or plead guilty to such offense, the identity of the court in which the · conviction or plea of guilty took place and the verdict and judgment rendered therein.

N.C. Gen. Stat. § 14-415.1(c) (2003) (emphasis added).

In the case *sub judice,* the indictment in question reads as follows:

[T]he defendant named above unlawfully, willfully and felo-niously did did [sic] have in his custody, care and control a hand-gun, on October 25, 2000. The defendant is a convicted felon in that on or about December 1, 1995, the defendant did commit the felony of Possess [sic] with Intent to Sell or Deliver Cocaine, in violation of G.S. 90-95(a)(1), and that on or about April 9, 1996, the defendant was convicted of that felony in Buncombe County Superior Court, Asheville, North Carolina, and was sentenced to 8-10 months in the North Carolina Department of Corrections.

Thus, the indictment expressly contains all of the elements required by § 14-415.1(c), except for the penalty for Possession with Intent to Sell or Deliver Cocaine. Cocaine is classified as a Schedule II con-trolled substance. *See* N.C. Gen. Stat. § 90-90(1)(d) (2003). Section 90-95, referenced in the statute, provides as follows: "[A]ny person who violates G.S. 90-95(a)(1) with respect to a controlled substance classified in Schedule I or II shall be punished as a Class H felon. . . ." N.C. Gen. Stat. § 90-95(b)(1) (2003).

The facts of this case are analogous to *State v. House*, 295 N.C. 189, 244 S.E.2d 654 (1978). In *House*, the defendant challenged a bill of indictment, arguing that it did not comply with N.C. Gen. Stat. § 15A-644(a), which provided as follows:

(a) An indictment *must* contain:

  (1) The name of the Superior Court in which it is filed;

  (2) The title of the action;

  (3) Criminal charges pleaded as provided in Article 49 of this Chapter, Pleadings and Joinder;

  (4) The signature of the solicitor, but its omission is not a fatal defect; and

  (5) The signature of the foreman or acting foreman of the grand jury attesting the concurrence of twelve or more grand jurors in the finding of a true bill of indictment.

295 N.C. at 200, 244 S.E.2d at 660, *citing* N.C. Gen. Stat. § 15A-644 (emphasis added). The indictment in question contained the fore-man's signature beneath the statement that the bill was found a "true bill," but contained no express attestation that twelve or more grand jurors concurred in finding it a true bill. *Id.*, 295 N.C. at 200-01.

Upon reviewing *House*, the Supreme Court stated the following:

"In determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration. Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory."

While, ordinarily, the word "must" and the word "shall," in a statute, are deemed to indicate a legislative intent to make the provision of the statute mandatory, and a failure to observe it fatal to the validity of the purported action, it is not necessarily so and the legislative intent is to be derived from a consideration of the entire statute. To interpret G.S. 15A-644 as requiring the quashing of a bill of indictment under the circumstances of this case would be to attribute to the Legislature an intent to paramount mere form over substance. This we decline to do.

295 N.C. at 203, 244 S.E.2d at 661-62, *quoting 73 Am. Jur. 2d, Statutes*, § 19.

In the case *sub judice*, we hold that the provision of § 14-415.1(c) that requires the indictment to state the penalty for the prior offense is not material and does not affect a substantial right. Defendant is no less apprised of the conduct which is the subject of the accusation than he would have been if the penalty for the prior conviction had been included in the indictment. To hold otherwise would permit form to prevail over substance. Thus, the trial court did not err by denying defendant's motion to dismiss the indictment.

[2] Defendant next asserts that the trial court erred by allowing the State to introduce evidence that defendant's probationary sentence for the possession with intent to sell and distribute cocaine conviction was revoked, and that an active sentence was imposed. We disagree.

The standard of review for this Court assessing evidentiary rulings is abuse of discretion. *State v. Meekins*, 326 N.C. 689, 696, 392 S.E.2d 346, 350 (1990). North Carolina Evidence Rule 404(b) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C, Rule 404(b) (2003). The rule has been interpreted by North Carolina courts as "a clear general rule of *inclusion.*" *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Relevant evidence of other crimes, wrongs or acts by a defendant are admissible subject to but one exception: "if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.*

In the case *sub judice*, Elizabeth Whittenberger ("Whittenberger"), a deputy clerk of superior court, testified on direct examination by the State as follows:

Q: I'm going to show you two documents that we will mark collectively as State's Exhibit No. 2 and ask you if you will identify those.

A: Okay. The first document that you're showing me is a judgment suspending sentence.

Q: Who does that document pertain to?

A: Wallace Boston.

. . . .

Q: And if you will look at—And for what conviction is that suspended judgment for?

A: That is for Possession with Intent to Sell Schedule II Cocaine, a felony.

Q: And if you will take a look at the second document that's in there.

A: Okay. That's a revocation of the judgment. It's a judgment and commitment where Wallace Boston's suspended sentence was revoked.

Q: And that's for the same charge, for Possession with Intent to Sell and Deliver Cocaine?

A: Correct.

MR. BROWN: Objection. Motion to strike that statement, Your Honor.

THE COURT: I didn't hear all of the statement. I'm sorry.

Q: I just said, and that is for the same charge of Possession with Intent to Sell Schedule II Cocaine.

THE COURT: And your objection as to that question?

MR. BROWN: I'm not objecting to that question. I'm objecting to her answer. She didn't answer the question. I think her answer would be either it was or it wasn't.

A: Well, I'm sorry you didn't hear me. I said yes, it is the same conviction.

Q: And are both of these documents certified and true copies?

A: Correct.

Q: And is that stamped "Certified" by you?

A: Yes, it is.

MR. MARTIN: Your Honor, the State would move to enter State Exhibit No. 2 into evidence.

MR. BROWN: I'm going to object to part of the exhibit.

THE COURT: Let me see State's Exhibit No. 2.

(PAUSE)

THE COURT: Come up here a minute.

(DISCUSSION OFF THE RECORD)

THE COURT: All right, ladies and gentlemen of the jury, State's Exhibit No. 2 is offered and received into evidence for the limited purpose of showing the Defendant Wallace Boston's status on the day in question and for no other purpose.

It is unclear from this testimony whether defendant actually made a Rule 404 objection to Whittenberger's testimony, and thus whether defendant properly preserved this issue for review on appeal. We see in the above exchange that defendant objected twice during Whittenberger's testimony. His first objection came

after the State's question tying the Revocation of Judgment to defendant's conviction of Possession with Intent to Sell and Distribute Cocaine. Defendant objected to the form of Whittenberger's answer. The second objection was to one of the two documents entered into evidence as State's Exhibit No. 2. However, because that objection was discussed off the record, we do not know the substance of defendant's objection.

Assuming *arguendo* that defendant's second objection was based on Rule 404, we conclude that the evidence was relevant for the purpose of proving defendant's status as a convicted felon, and was therefore admissible. To the extent that the evidence tended to show that defendant committed inadmissible prior bad acts, i.e., that he violated the terms of his probation, we hold that the trial court's limiting instructions to the jury were sufficient to cure any prejudice against defendant. This assignment of error is overruled. .

[3] Defendant last argues that the trial court erred by failing to instruct the jury that justification is an affirmative defense to the charge of possession of firearms by a felon. We disagree.

Recently, the federal courts have recognized justification as an affirmative defense to possession of firearms by a felon. *See U.S. v. Deleveaux*, 205 F.3d 1292 (11th Cir. 2000). However, the North Carolina Court of Appeals has specifically noted "that the *Deleveaux* court limited the application of the justification defense to 18 U.S.C. § 922(g)(1) cases (federal statute for possession of a firearm by a felon) in 'only extraordinary circumstances.'" *State v. Napier*, 149 N.C. App. 462, 465, 560 S.E.2d 867, 869, *quoting Deleveaux*, 205 F.3d at 1297.

In *Napier*, the defendant was a convicted felon who was involved in an on-going dispute with his neighbor and the neighbor's son. On or about 30 June 1999, the neighbor's son discharged a shotgun directed over the defendant's property. The neighbor's son continued this action for the next several days. On 3 July 1999, the defendant walked over to the neighbor's property armed with a nine millimeter handgun in a holster on his hip to confront the neighbor and the neighbor's son. The confrontation escalated into a physical altercation and the defendant shot the neighbor's son in the arm.

This Court declined to apply the *Deleveaux* rationale in *Napier* because the evidence did not support a conclusion that the defendant was under an imminent threat of death or injury. 149 N.C. App. at 465,

560 S.E.2d at 869. This Court reached this conclusion despite evidence that the neighbor had been firing bullets over the defendant's property and that the two parties engaged in prior altercations. *Id.*

In the case *sub judice*, the evidence tended to show that defendant and Daniels were engaged in an on-going conflict whereby in the week prior to the shooting, Daniels threatened to kill defendant, and on at least one prior occasion Daniels fired a gun at defendant. However, the evidence also tends to show that on the day of the shooting, defendant was observed walking through the apartment complex carrying a pistol. The State's evidence also tended to show that defendant chased Daniels around a parked car with the gun in hand. Therefore, we hold that, as in *Napier*, there is no evidence to support the conclusion that defendant was under an imminent threat of death or injury when he made the decision to carry the gun. Accordingly, the trial court did not err in failing to instruct the jury on justification as an affirmative defense.

No error.

Judge ELMORE concurs.

Judge WYNN concurs in the result.